COOPER, WHITE & COOPER LLP
PATRICK M. ROSVALL (SBN 217468)
email: prosvall@cwclaw.com
JILL B. ROWE (SBN 197713)
email: jrowe@cwclaw.com
SCOTT M. McLEOD (SBN 242035)
email: smcleod@cwclaw.com
201 California Street, 17th Floor
San Francisco, California 94111
Telephone:     (415) 433-1900
Facsimile:     (415) 433-5530

Attorneys for Comcast Cable Communications
Management, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| SACRAMENTO METROPOLITAN CABLE TELEVISION COMMISSION,<br><br>        Plaintiff,<br><br>        vs.<br><br>COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>        Defendant. | CASE NO.<br><br>**NOTICE OF REMOVAL**<br>**28 U.S.C. § 1332 (Diversity)**<br><br>Trial Date: None Set |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC ("Comcast"), a Delaware limited liability company, hereby removes to this Court the state Court action described below:

1.     On January 29, 2018, an action was commenced in the Superior Court of the State of California in and for the County of Sacramento, entitled *Sacramento Metropolitan Cable Television Commission v. Comcast Cable Communications Management, LLC,* Case Number 34-2018-002262254.  Copies of the summons, complaint, notice of case management conference and order to appear, and civil case cover sheet, are attached hereto collectively as **Exhibit A**.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1205443.1

2. On February 7, 2018, Sacramento Metropolitan Cable Television Commission ("SMCTC") served Comcast's registered agent with a copy of the complaint and summons.

3. This action is one which may be removed to this Court by Comcast pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, because SMCTC alleges damages in at least the amount of $682,911 (Complaint, ¶¶ 29, 34.)

4. Currently and at the time the complaint was filed, Plaintiff SMCTC is and was a joint powers agency responsible for regulating cable television/video franchises in portions of Sacramento County, California, and a citizen of the state of California.

5. Comcast Cable Communications Management, LLC is a single member Delaware limited liability company. Its sole member is Comcast Cable Communications LLC, which is itself a single member Delaware limited liability company. Comcast Holdings Corporation is the sole member Comcast Cable Communications LLC. Comcast Holdings Corporation is a citizen of Pennsylvania because it is incorporated in the state of Pennsylvania and has its principal place of business in the state of Pennsylvania. Accordingly, currently and at the time the complaint was filed, Comcast Cable Communications Management LLC is and was a citizen of Pennsylvania and complete diversity exists.

DATED: March 8, 2018          COOPER, WHITE & COOPER LLP


By:    /s/Scott M. McLeod
       Scott M. McLeod
       Attorneys for Comcast Cable Communications
       Management, LLC

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1205443.1

2

# Exhibit A

 **CT Corporation**

TO: Rosemarie Pierce
Comcast Corporation
1701 John F. Kennedy Blvd, One Comcast Center - 50th Floor
Philadelphia, PA 19103

RE: **Process Served in California**

FOR: Comcast Cable Communications Management, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Sacramento Metropolitan Cable Television Commission, Pltf. vs. Comcast cable And Communications Management, LLC, Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Instructions, Complaint |
| **COURT/AGENCY:** | Sacramento County - Superior Court - Sacramento, CA Case # 34201800226254 |
| **NATURE OF ACTION:** | Breach of Contract |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/07/2018 at 12:15 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Harriet A Steiner Best Best & Krieger LLP 500 Capitol Mall Suite 1700 Sacramento, CA 95814 916-325-4000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/08/2018, Expected Purge Date: 02/13/2018<br><br>Image SOP |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

*2 607/8 e 12:45*

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COMCAST CABLE COMMUNICATINS MANAGEMENT, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SACRAMENTO METROPOLITAN CABLE TELEVISION COMMISSION

> *FOR COURT USE ONLY*
> *(SOLO PARA USO DE LA CORTE)*
>
> FILED
> Superior Court Of California,
> Sacramento
> 01/29/2018
> nzeyaad
> By _____ , Deputy
> Case Number:
> 34-2018-00226754

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* |
| Gordon D. Schaber Sacramento County Courthouse | |
| 720 9th Street | |
| Sacramento, CA 95814 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Harriet A. Steiner, SBN 109436; Joshua Nelson, SBN 260803; Telephone: (916) 325-4000
BESTBEST BEST & KRIEGER LLP
500 Capitol Mall, Suite 1700, Sacramento, CA 95814

| DATE: | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* JAN 2 9 2019 | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons. (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Comcast Cable Communicatins Management, LLC
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* Limited liability Company.
4. ☑ by personal delivery on *(date):* 2/07/18

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | SUMMONS | American LegalNet, Inc www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |

1  HARRIET A. STEINER, Bar No. 109436
   JOSHUA NELSON, Bar No. 260803
2  BEST BEST & KRIEGER LLP
   500 Capitol Mall, Suite 1700
3  Sacramento, California 95814
   Telephone: (916) 325-4000
4  Facsimile: (916) 325-4010

5  Attorneys for Plaintiff
   Sacramento Metropolitan Cable Television
6  Commission

FILED
Superior Court Of California,
Sacramento
01/29/2018
nzeyaad
By_____, Deputy
Case Number:
34-2018-00226254

7
8
   **EXEMPT FROM FILING FEES**
   Gov't Code § 6103

9          SUPERIOR COURT OF CALIFORNIA

10           COUNTY OF SACRAMENTO

11            UNLIMITED JURISDICTION

12

13  SACRAMENTO METROPOLITAN
    CABLE TELEVISION COMMISSION,
14
            Plaintiff,
15
        v.
16
    COMCAST CABLE
17  COMMUNICATIONS MANAGEMENT,
    LLC,
18
            Defendant.
19
20

Case No.

COMPLAINT FOR:

1. VIOLATION OF CAL. PUB. UTIL. CODE
   §§ 5840, 5860, 5870

2. BREACH OF CONTRACT

3. UNJUST ENRICHMENT

4. DECLARATORY RELIEF

***    Deemed Verified Pursuant to Code
       of Civil Procedure section 446

21
22
23
24
25
26
27
28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

1    Plaintiff the Sacramento Metropolitan Cable Television Commission ("SMCTC" or

2    "Plaintiff"), hereby alleges against Defendant Comcast Cable Communications Management,

3    LLC, d/b/a Comcast ("Comcast" or "Defendant"):

### NATURE OF THE ACTION

4

5    1.    This is an action brought under the Digital Infrastructure and Video Competition

6    Act of 2006, Cal. Pub. Util. Code §§ 5800 et seq. ("DIVCA") to recover amounts wrongfully

7    withheld by Defendant from Plaintiff which were required to be paid pursuant to Public Utilities

8    Code §§ 5840, 5860 and 5870.

### PARTIES

9

10   2.    Plaintiff SMCTC, is a joint powers agency, existing under the laws of the state of

11   California.   SMCTC's member agencies are the County of Sacramento, and the cities of

12   Sacramento, Citrus Heights, Folsom, Rancho Cordova, Elk Grove, and Galt, all of which are

13   located within the County of Sacramento.

14   3.    Defendant Comcast Cable Communications Management, LLC is a Delaware

15   limited liability company whose principal place of business is located in the City of Livermore,

16   California.   Defendant operates as a "video service provider" under a state franchise issued

17   pursuant to DIVCA.

18   4.    Defendant is presently providing video services, under its State franchise to one or

19   more residents within the jurisdictional limits of Plaintiff.

### JURISDICTION AND VENUE

20

21   5.    Pursuant to CAL. CODE CIVIL PROC. § 410.10, this Court has jurisdiction over any

22   subject matter not inconsistent with the Constitution of this State and the United States.   This

23   Court has subject matter jurisdiction over this matter because this Complaint seeks court

24   resolution of a dispute regarding Defendant Comcast's payment of amounts owed to Plaintiff and

25   its member agencies, which is enforceable through actions brought in a court of competent

26   jurisdiction.   CAL. PUB. UTIL. CODE §§ 5840(i), 5870(p).

27   6.    This Court has personal jurisdiction over Defendant because its principal place of

28   business is located within California.   In addition, as a condition of obtaining its state franchise

82461.00000\30089880.3                          - 2 -

1  under DIVCA, Defendant agreed to accept service of process and submit to the jurisdiction of
2  California courts. .

3      7.    Pursuant to CAL. CODE CIVIL PROC. §§ 395(a) and 395.5, this Court is the proper
4  venue to hear this action because Defendant does substantial business in the County of
5  Sacramento, and it is where Defendant's obligations or liability arose or the breach occurred,
6  giving rise to the claims set forth in this Complaint.

7                              **FACTUAL BACKGROUND**

8                              Comcast's State Video Franchise

9      8.    The federal Cable Communications Policy Act of 1984 (the "Cable Act"), codified
10  at 47 U.S.C. §521 et seq., requires every cable service provider to obtain a cable franchise from a
11  state or local entity. Prior to January 1, 2007, CAL. GOV. CODE § 53066 authorized local entities
12  to grant cable television franchises and regulate cable television systems and other video service
13  providers, subject to some limitations. Thus, a company seeking authority to install facilities and
14  equipment in public rights-of-way in California in order to provide cable or video services to the
15  public was required to obtain a franchise from the pertinent local government (typically a city or
16  county). However, that changed under DIVCA.

17      9.    DIVCA became effective on January 1, 2007, and established a new scheme for
18  franchising "video service providers." DIVCA was written so that it reached not only companies
19  like Defendant that concede that they are "cable operators" subject to the Cable Act's
20  requirements, but also companies that had contended they were not required to obtain a franchise
21  under the Cable Act or the CAL. GOV. CODE.

22      10.  .  DIVCA shifted the authority to grant video service franchises from local
23  jurisdictions to the state. After January 1, 2007, entities seeking to enter a market for the first
24  time must obtain a franchise from the state. Providers who had a local franchise prior to
25  January 1, 2007, continue to operate under the local franchise until it expires or terminates in
26  accordance with DIVCA or until a state-issued franchisee enters the market. The local franchises
27  must then be replaced with state-issued franchises. The California Public Utilities Commission
28  ("CPUC") is the agency responsible for issuing state franchises.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

82461.00000\30089880.3                    - 3 -

11. DIVCA, among other things, permits a state video service franchise holder to use valuable local public rights-of-way, and requires Plaintiffs to provide a state video franchise holder access to those rights-of-way under terms and conditions as described in the legislation. For example, CAL. PUB. UTIL. CODE § 5885(a) requires local entities, including Plaintiffs, to allow "the holder of a state franchise" to "install, construct, and maintain a network within public rights-of-way under the same time, place, and manner as the provisions governing telephone corporations under applicable state and federal law, including, but not limited to, the provisions of Section 7901.1."

12. In return, a state franchise holder must satisfy certain requirements established by DIVCA, including the payment of franchise fees and public, education and government ("PEG") channel fees as discussed below.

13. In order to obtain a state franchise, an applicant must submit a form to the state containing a sworn affidavit in which it attests that it will pay all applicable franchise and PEG fees and otherwise comply with DIVCA.

14. Under DIVCA, the Commission must issue a franchise within fourteen (14) days if the application submitted is complete. The Commission does not investigate whether an applicant can comply with the law, or the accuracy of the statements contained in the application.

15. The franchise issued authorizes the Applicant to occupy the rights-of-way in its service territory, and also authorizes it to provide video service. It is unlawful to provide service without a franchise.

16. While the CPUC has responsibility for issuing franchises and for enforcing certain of the DIVCA requirements, the CPUC has declared that local governments and the courts have responsibility for enforcing PEG requirements and fees and the payment of franchise fees. In its *Rulemaking for Adoption of a General Order, Procedures to Implement Digital Infrastructure, Video Competition Act of 2006*, 2007 WL 725608, Cal.P.U.C., March 01, 2007, (NO. D.07-03-014, R-06-10-005, ID 150794), the CPUC stated:

DIVCA endows the Commission with authority to regulate franchising (§§ 5840 and 5950), antidiscrimination (§ 5890), reporting (§§ 5920 and 5960), the prohibition on the use of rate increases for stand-alone, residential,

primary line, basic telephone services to finance video deployment (§§ 5940 and 5950), and annual user fees (§ 401, §§ 440-444, § 5840). For other provisions, the Commission lacks explicit regulatory authority. Localities are afforded the authority to regulate collection and payment of franchise fees (§ 5860), PEG channel requirements (§ 5870), the Emergency Alert System (§ 5880), and, notably, federal and state customer service and protection standards (§ 5900).

17.     On or about December 12, 2007, Defendant filed an "Application for a New or Amended California State Video Franchise" at the CPUC ("Franchise Application").

18.     On or about January 2, 2008, the CPUC issued "California Video Franchise Certificate: Franchise Number: 0021" ("State Franchise") to Defendant Comcast.

19.     Comcast was an incumbent cable provider within Plaintiff's jurisdiction. Under Public Utilities Code section 5840(o)(3), Comcast was able to transition from its existing local franchise to a state-wide franchise upon the entry of a statewide franchisee to Plaintiff's jurisdiction.

20.     One or more statewide franchisees operate within Plaintiff's jurisdiction.

21.     Plaintiff and its member agencies are included among the list of "Affected Local Entities" in Defendant's State Franchise, meaning that the State Franchise may include all or part of each Plaintiff's territory. At all times relevant to this Complaint, Comcast operated within Plaintiff's jurisdiction under its State Franchise.

Franchise and PEG Fees

22.     CAL. PUB. UTIL. CODE § 5840(q) establishes a statewide franchise fee on the gross revenues of each franchisee payable as rent or a toll for the use of the public rights-of-way. This franchise fee is equal to five percent (5%) of gross revenues or the percentage applied by the local entity to the gross revenue of the incumbent cable operator, whichever is less. This franchise fee is payable to each local agency where the franchisee operates calculated based as the proportional share of the franchisee's gross revenue derived from the provision of video service within that jurisdiction. CAL. PUB. UTIL. CODE § 5860(a).

23.     The franchise fee is remitted to the local agency quarterly, within forty-five (45) days after the end of the quarter for that calendar quarter. Each payment must be accompanied by

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

COMPLAINT

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

1   a summary explaining the basis for the calculation of the franchise fee. If the holder does not pay

2   the franchise fee when due, the holder must pay a late payment charge at a rate per year equal to

3   the highest prime lending rate during the period of delinquency, plus one percent (1%).

4        24.   Each of Plaintiff's member agencies has adopted or authorized Plaintiff to adopt

5   an ordinance establishing a five percent (5%) franchise fee as permitted by DIVCA. See

6   Sacramento County Code § 5.50.977, Citrus Heights Municipal Code § 90-183, Elk Grove

7   Municipal Code § 5.50.010, Folsom Municipal Code § 5.50.010, Galt Municipal Code

8   § 5.55.030, Rancho Cordova Municipal Code § 5.75.800, Sacramento City Code §5.28.2670; see

9   also Commission Resolution No. 07-011.

10       25.   CAL. PUB. UTIL. CODE § 5870(n) authorizes local agencies to establish PEG fees

11  by ordinance. The PEG fee may not exceed three percent (3%) in the event that the agency

12  imposed a PEG fee in excess of one percent (1%) as of December 31, 2006. Once the agency

13  provides the franchisee with notice of the PEG fee, PEG fees are paid quarterly within forty-five

14  (45) days after the end of the quarter for the preceding calendar quarter.

15       26.   Plaintiff and its member agencies have imposed a one percent (1%) PEG fee as

16  permitted by DIVCA. See Sacramento County Code § 5.50.977, Citrus Heights Municipal Code

17  § 90-183, Elk Grove Municipal Code § 5.50.010, Folsom Municipal Code § 5.50.010, Galt

18  Municipal Code § 5.55.030, Rancho Cordova Municipal Code § 5.75.800, Sacramento City Code

19  § 5.28.2670; see also Commission Resolution No. 07-011.

20       27.   Plaintiff is authorized to administer and enforce all DIVCA franchises within its

21  member agencies, including collecting unpaid franchise and PEG fees. See Sacramento County

22  Code § 5.50.977, Citrus Heights Municipal Code § 90-183, Elk Grove Municipal Code

23  § 5.50.010, Folsom Municipal Code § 5.50.010, Galt Municipal Code § 5.55.030, Rancho

24  Cordova Municipal Code § 5.75.800, Sacramento City Code §5.28.2670; see also Commission

25  Resolution No. 07-011.

26       28.   Defendant purportedly paid Plaintiff franchise and PEG fees for Calendar Years

27  2013-2014.

28  ///

82461.00000\30089880.3                   - 6 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

29.     As permitted by DIVCA, Plaintiff conducted an audit of Calendar Years 2013-2014 payments (collectively, the "Audit"). This Audit determined that Comcast underpaid franchise and PEG fees by approximately $776,357, excluding late fees, interest and other amounts owed. A true and correct copy of the Audit is attached as Exhibit A and incorporated by this reference. After Comcast provided additional information to Plaintiff, Plaintiff's auditor prepared revised findings indicating that Comcast underpaid franchise and PEG fees by approximately $682,911, excluding late fees, interest and other amounts owed. A true and correct copy of the revised findings are attached as Exhibit B and incorporated by this reference.

30.     Plaintiff and Defendant entered into that certain Tolling Agreement as amended by that certain First Amendment to Tolling Agreement, certain Second Amendment to Tolling Agreement, certain Third Amendment to Tolling Agreement, certain Fourth Amendment to Tolling Agreement, certain Fifth Amendment to Tolling Agreement and certain Sixth Amendment to Tolling Agreement (collectively, the "Tolling Agreement"). The Tolling Agreement tolls all applicable statute of limitations for claims related to the Audit until January 31, 2018. A true and correct copy of the Tolling Agreement is attached as Exhibit C and incorporated by this reference.

## FIRST CAUSE OF ACTION

### Violation of CAL. PUB. UTIL. CODE §§ 5840, 5860, 5870

31.     Plaintiffs refer to and incorporate, as though fully set forth herein, paragraphs 1 through 30, inclusive, of this Complaint.

32.     Defendant underpaid Plaintiff franchise and PEG fees for Calendar Year 2013-2014.

33.     This violates CAL. PUB. UTIL. CODE §§ 5840, 5860, 5870.

34.     Plaintiff is entitled to recover the exact amount underpaid by Defendant, currently estimated at $682,911, subject to proof at trial. Plaintiff is also entitled to recover applicable late fees, interest and the cost of the Audit.

///

///

## SECOND CAUSE OF ACTION

### Breach of Contract

35.     Plaintiffs refer to and incorporate, as though fully set forth herein, paragraphs 1 through 34, inclusive, of this Complaint.

36.     Under California law, a statute may create rights giving rise to relied under contract or tort theories.

37.     Plaintiff conferred a benefit on Defendant by permitting Defendant to install facilities in the rights-of-way pursuant to the DIVCA franchise.

38.     Plaintiff is a specific beneficiary of the franchise fee and PEG fee provisions of DIVCA.

39.     Defendant, as a condition of obtaining the state franchise swore to pay all applicable franchise and PEG fees as required by DIVCA.

40.     Comcast thereby assumed a contractual obligation or a contractual obligation is implied in law to pay all applicable franchise and PEG fees.

41.     Comcast has breached its duty to Plaintiff by failing to pay all applicable franchise and PEG fees owed for Calendar Years 2013-2014.

42.     Plaintiff is entitled to recover damages for such underpayment.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

43.     Plaintiffs refer to and incorporate, as though fully set forth herein, paragraphs 1 through 42, inclusive, of this Complaint.

44.     Plaintiff through its member agencies has allowed Defendant to place facilities within the rights-of-way and provide video service pursuant to a DIVCA franchise.

45.     Defendant failed to pay Plaintiff the total amount owed for such rights under DIVCA.

46.     Accordingly, Plaintiff has not received sufficient value for such rights provided to Defendant, and Defendant has been unjustly enriched at Plaintiff's expense.

///

82461.00000\30089880.3

- 8 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

## FOURTH CAUSE OF ACTION

### Declaratory Judgment – Violation of CAL. PUB. UTIL. CODE §§ 5840, 5860, 5870

### (By All Plaintiffs)

47.     Plaintiffs refer to and incorporate, as though fully set forth herein, paragraphs 1 through 46, inclusive, of this Complaint.

48.     Comcast has violated DIVCA by failing to pay all applicable franchise and PEG fees owed for Calendar Years 2013-2014.

49.     As a result of Defendant's violations of CAL. PUB. UTIL. CODE §§ 5840, 5860, 5870, Plaintiff has been and continues to be harmed.

50.     As such, there is an actual and present controversy between Plaintiff and Defendant.

51.     Plaintiff is entitled to seek declaratory relief under CAL. CODE CIV. PROC. § 1060.

52.     Further, the construction of a statute is the proper subject for declaratory relief. *See, e.g., Apartment Assn. of Los Angeles v. Los Angeles* (2006) 136 Cal.App.4[th] 119, 128 .

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment against Defendant as follows:

1.     A declaration that Defendant is in violation of DIVCA, CAL. PUB. UTIL. CODE §§ 5840, 5860, 5870;

2.     All amounts owed Plaintiff for unpaid franchise and PEG fees for Calendar Years 2013-2014, including late fees, interest and costs of the Audit;

3.     For damages in an amount to be determined at trial;

///

///

///

///

//

///

4. For costs of suit herein, including reasonable attorneys' fees; and

5. For such other and further relieve as the Court may deem just and proper.

Dated: January 29, 2018

BEST BEST & KRIEGER LLP

By: _____
HARRIET A. STEINER
JOSHUA NELSON
Attorneys for Plaintiff
Sacramento Metropolitan Cable Television
Commission

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CALIFORNIA 95814

# EXHIBIT A



## ASHPAUGH & SCULCO, CPAs, PLC
### Certified Public Accountants and Consultants

February 1, 2017

Robert Davison, Executive Director
Sacramento Metropolitan Cable TV Commission
799 G Street, 4th Floor
Sacramento, CA 95814

**Subject:** **Review of Franchise and PEG Fees Paid by Comcast to the Sacramento Metropolitan Cable Television Commission, California**

Dear Mr. Davison:

Ashpaugh & Sculco, CPAs, PLC was engaged by the Sacramento Metropolitan Cable Television Commission, California ("SMCTC") to perform a review of the franchise and PEG fees paid by Comcast. Please find enclosed our findings for the review period of January 1, 2013 through December 31, 2014. To review the franchise and PEG fees paid by Comcast, A&S performed the Scope of Work included on page two of this letter report.

This letter report is intended solely for the information and use of SMCTC, is not intended to be, and should not be used by anyone other than these specified parties. It is our opinion that the total amount due to SMCTC from Comcast for underpayment of franchise fees, PEG fees, and interest, totals $884,622, as shown on page two of this letter report.

We appreciate the opportunity to be of service to you. If you have any questions, please let us know. We can be reached at (407) 645-2020.

Sincerely,

**ASHPAUGH & SCULCO, CPAS, PLC**

*Ashpaugh & Sculco, CPAs, PLC*

300 North New York Avenue, #879 • Winter Park, FL 32790 • 407.645.2020 • Fax 866-397-0871
gashpaugh@ascpas.com • csculco@ascpas.com

## SUMMARY

Ashpaugh & Sculco, CPAs, PLC was engaged by the Sacramento Metropolitan Cable Television Commission, California ("SMCTC") to perform a review of the franchise and PEG fees paid by Comcast. The review period was from January 1, 2013 through December 31, 2014 ("review period").

The purpose of our review was to determine whether Comcast was in conformance with Comcast's state franchise under the Digital Infrastructure and Video Competition Act of 2006 ("DIVCA") enacted in California. In accordance with DIVCA, franchise fees are 5.00% of gross revenues and the PEG fee obligation is 1.00% of gross revenues. A&S has identified the total amount due to SMCTC for underpayment of franchise fees, PEG fees, and interest charges is $884,622.

### TABLE 1

| Item No. | Description | Franchise Fees Due to SMCTC | PEG Fees Due to SMCTC | Total Due to SMCTC |
|---|---|---|---|---|
| | Franchise & PEG Fees Paid by Comcast | $19,599,011 | $3,928,914 | $23,527,925 |
| | California PUC Fees | (46,076) | - | (46,076) |
| | **Net Amount Paid by Comcast** | $19,552,936 | $3,928,914 | $23,481,850 |
| | | | | |
| | **Adjustments** | | | |
| A | Subscriber Revenues | $98,048 | $19,610 | $117,657 |
| B | Multi-Service Revenues | 192,358 | 38,472 | 230,829 |
| C | Late Fees | 44,032 | 8,806 | 52,839 |
| D | Non-Sufficient Funds Fees | 11,563 | 2,313 | 13,875 |
| E | Video Installation/Activation | 17,131 | 3,426 | 20,557 |
| F | Video Revenues in HSD Service | 8,564 | 1,713 | 10,277 |
| G | Bad Debt | 25,990 | 5,198 | 31,189 |
| H | PEG Fee Revenues | 194,282 | 38,856 | 233,139 |
| I | Tower Rentals | 788 | 158 | 946 |
| J | Home Shopping | 1,225 | 245 | 1,470 |
| K | Launch Incentives | 14,587 | 2,917 | 17,504 |
| L | California PUC Fees | - | - | - |
| | **Total Adjustments** | $608,568 | $121,714 | $730,282 |
| | | | | |
| | Franchise & PEG Fees Calculated by A&S | $20,207,580 | $4,050,627 | $24,258,207 |
| | Net Amount Paid by Comcast | (19,552,936) | (3,928,914) | (23,481,850) |
| | **Amount Due to SMCTC** | $654,644 | $121,714 | $776,357 |
| M | Interest Charges | 82,697 | 25,568 | 108,265 |
| | **Total Amount Due to SMCTC** | $737,341 | $147,282 | $884,622 |

### SCOPE OF WORK

A&S was not engaged to and did not perform an audit of Comcast, the objective of which would be the expression of an opinion that the financial statements provide a representation of the operations for the period reviewed. Accordingly, we do not express such an opinion. Had A&S performed such additional procedures, other matters might have come to our attention that would have been reported to SMCTC. This report relates only to a review of Comcast's gross revenues used to calculate franchise fees and does not extend to any financial statements of Comcast or SMCTC. A&S has relied solely on information provided to us by SMCTC and Comcast. This report is intended solely for the information and use of SMCTC, is not intended to be, and should not be used by anyone other than this specified party.

A&S performed a review of the franchise and PEG fees paid by Comcast to SMCTC to determine whether Comcast complied with franchise and PEG fee obligations of DIVCA. The analysis was performed solely to assist SMCTC with respect to evaluating franchise and PEG fees owed by Comcast to SMCTC for the review period. All conclusions and recommendations are based on data responses, accounting records, and interviews provided by SMCTC and Comcast. A&S performed the following Scope of Work:

1.  Submitted initial data request to Comcast, on behalf of SMCTC, requesting information for the review period.

2.  Reviewed DIVCA, to gain an understanding of the terms, conditions, and requirements for the determination of franchise and PEG fees.

3.  During the course of the project, submitted data requests to Comcast to follow-up and resolve outstanding items and questions.

4.  Corresponded with Comcast and SMCTC's staff, if needed, to obtain additional information.

5.  Reconciled revenues reported in franchise and PEG fee payments to supporting data provided by Comcast.

6.  For the review period, determined whether all categories of revenues were properly included in the calculation of franchise and PEG fees.

7.  Summarized the dollar impact of any exceptions noted for each year.

8.  Calculated interest charges associated with the underpayment of franchise and PEG fees.

9.  Prepared draft and final reports for SMCTC summarizing our findings and recommendations.

### REVIEW OF FRANCHISE AND PEG FEES

In accordance with the DIVCA, franchise fees are 5.00% of gross revenues and PEG fees are 1.00% of gross revenues. A&S reviewed franchise and PEG fees paid by Comcast to SMCTC for the review period of January 1, 2013 through December 31, 2014. The total amount due to SMCTC for underpayment of franchise and PEG fees is $884,622. We explain our adjustments and reference

---

ASHPAUGH & SCULCO, CPAS, PLC

them by item number in the remainder of this report, using the same item numbers listed in Table 1.

### ANALYSIS OF SUBSCRIBER REVENUES

Comcast earns the substantial portion of its revenues from cable television subscriber fees. Cable subscriber revenues include amounts received for programming (basic, digital, high-definition), premium channels, franchise fees, pay-per-view, installation charges, channel guides, equipment lease rentals, late fees, returned check fees and other miscellaneous charges. A&S reconciled the subscriber revenues to the franchise and PEG fee payments, on a test basis, utilizing the same data as Comcast for reporting revenues to SMCTC.

### Subscriber Revenues (Item A)

A&S reviewed the monthly subscriber revenues to determine which revenues were properly included or excluded from the revenues reported to SMCTC. Comcast provided us with a detailed reconciliation schedule for December 2014. We used the sample month as guidance to review and reconcile the remaining months, and to determine whether Comcast correctly reported revenues to SMCTC.

Comcast made a decision to exclude certain subscriber revenues because, in Comcast's opinion, they were not revenues in accordance with the definition of gross revenues. We reviewed the revenues and determined they were either incorrectly excluded from gross revenues reported to SMCTC or we did not receive an adequate explanation as to why the revenue was excluded.

Due to the confidential nature of the subscriber revenues, we have not provided any additional detail in this report. At Comcast's request and SMCTC's approval, we will submit supporting calculations to Comcast for their subsequent review and discussion.

### "Multi-Service" Revenues, Late Fees, and Non-Sufficient Funds Fees (Items B, C and D)

Comcast classifies the following revenues as "multi-service", i.e., related to more than just video: late fees, non-sufficient funds ("NSF") fees, convenience fees, service protection plan fees, administrative fees, and early termination fees. Comcast allocates the "multi-service" revenues based on an allocation factor of video revenues to total service revenues (video revenues divided by the sum of video, high-speed, voice and security revenues). Each of these charges is associated with the bill or the service package and is not related to a line of business (i.e., video, HSD, voice or security). For example, the late fee charged is the same whether the subscriber takes only video or takes multiple services.

Comcast has proposed an argument that, according to generally accepted accounting principles ("GAAP"), these revenues are "multiple products" and should be allocated. This argument is without merit. None of the late fees, NSF fees, convenience fees and administrative fees are products. As stated above, the fee is the same in every instance when the situation arises, i.e., when the bill is late or the subscriber contacts Comcast, and holds no relationship to any line of business.

We have identified the late fees and non-sufficient funds fees separately in Table 1, as these fees are specifically referred to in the definition of gross revenues under DIVCA. A&S disagrees that

the "multi-service" revenues should be allocated and made an adjustment to include 100% of the revenues collected from subscribers in the gross revenues reported to SMCTC.

### Video Installation/Activation (Item E)

Comcast provides customers with an on-time guarantee and gives a customer a credit on their bill if Comcast is late or fails to show up for an appointment. In addition, if Comcast fails to repair a problem on the first visit and has to make repeated trouble calls, Comcast often times gives customers a credit on their bills. Comcast decreased the revenues reported to SMCTC for credits related to failed on-time guarantees, installations and repairs. It is our opinion that these are business expenses and should not decrease the gross revenues reported to SMCTC. A&S made an adjustment to reverse all of the deductions.

### Video Revenues Recorded in HSD Revenues (Item F)

Comcast records subscriber revenues on the CPSM-318 third party billing reports. The reports are segregated by type of service revenues: video, high-speed data ("HSD"), and telephone. It appears that Comcast collected franchise fees from subscribers for a portion of the revenues recorded in the HSD revenues. Although these revenues are recorded in the HSD section of the CPSM-318 billing reports, they are revenues received from subscribers and billed on cable bills. Comcast could not identify which revenues were incorrectly included in the section of HSD revenues or were allocable from HSD revenues. A&S made an adjustment to gross-up the franchise fees recorded in the HSD section of the CPSM-318 billing reports.

### Bad Debt (Item G)

Subscriber bad debt reported to SMCTC should include only actual video write-offs and recoveries. Historically, the CPSM-318 billing reports utilized by Comcast did not provide the breakout of write-offs and recoveries by line of business. Comcast estimated video write-offs based on an allocation of video revenues to total subscriber revenues. Based on our review of the billing reports, A&S noted that the billing reports listed actual bad debt write-offs and recoveries by line of business for the review period. However, the bad debt detail was not accurately reported by line of business. Although we disagree with the Comcast's allocation of bad debt based on revenues, absent a better method supported by data, we recalculated bad debt, net of all adjustments, utilizing an allocation based on billed revenues. A&S made an adjustment to bad debt for the difference in Comcast's estimate of bad debt as compared to our estimate of bad debt.

### PEG Fee Revenues (Item H)

Comcast did not include the revenues collected from subscribers related to the pass-through of PEG fees in the gross revenues reported to SMCTC for the review period. These are revenues received from subscribers and billed on their cable bills. A&S included the amounts collected from subscribers for PEG fees in the gross revenues reported to SMCTC.

### ANALYSIS OF NON-SUBSCRIBER REVENUES

Comcast included non-subscriber revenues generated from advertising, home shopping and other revenues. A&S obtained and reviewed the amounts from supporting documentation

provided by Comcast. Based on our review, we noted the following exceptions.

### Tower Rentals (Item I)

Comcast did not include the revenues from tower rentals in the gross revenues reported to SMCTC. Based on our review of the definition of gross revenues, we do not see any exclusion for tower rentals. A&S made an adjustment to include tower rentals in the gross revenues reported to SMCTC.

### Home Shopping Revenues (Item J)

A&S recalculated home shopping revenues and compared them to home shopping revenues reported by Comcast. Comcast reported incorrect amounts for October and December 2014. A&S adjusted home shopping revenues to reflect the revised amounts.

### Launch Incentives (Item K)

Comcast received launch incentives from programming suppliers as reimbursement of costs incurred in support of the launch or promotion of new programming. Comcast records launch incentives as "contra-expenses" and does not recognize them as revenues. There is no exclusion of any payments from the definition of gross revenues, as defined in Section 5860(d) of DIVCA.

However, Comcast may deduct from launch incentives associated with "specific, identifiable marketing costs incurred by the holder of a state franchise for the introduction of new programming", as defined in Section 5860(e)(9). If Comcast can provide any specific, identifiable marketing costs, we will review the data to determine whether it is an offset to the launch incentives. A&S made an adjustment to include launch incentives.

### California PUC Fees (Item L)

Comcast deducted "California PUC Fees" assessed by the California Public Utilities Commission to holders of state issued franchises from the fourth quarter franchise fee payments. Based on our review of DIVCA and federal law, we disagree that the California PUC Fees should be deducted from the franchise fee payments. A&S did not reduce franchise fees owed to SMCTC by the amount of California PUC Fees paid by Comcast, as shown on Table 1.

### INTEREST CHARGES (Item M)

Interest charges are defined in DIVCA, Section 5860, paragraph (h) as follows:

> The state franchise fee shall be remitted to the applicable local entity quarterly, within 45 days after the end of the quarter for that calendar quarter. Each payment shall be accompanied by a summary explaining the basis for the calculation of the state franchise fee. If the holder does not pay the franchise fee when due, the holder shall pay a late payment charge at a rate per year equal to the highest prime lending rate during the period of delinquency, plus 1 percent. If the holder has overpaid the franchise fee, it may deduct the overpayment from its next quarterly payment.

A&S calculated interest charges, compounded annually, for the underpayment of franchise fees utilizing the prime rate plus 1.00%.

The prime rate was 3.25% through December 31, 2015. It increased to 3.50% on January 1, 2016, and increased again to 3.75% on January 1, 2017. A&S assumed that payment of the outstanding amount would be on January 31, 2017. If payment is subsequent to January 31, 2017, additional interest charges will accrue. Interest charges will be recalculated based on when actual payment is expected to be received.

DIVCA does not address the issue of interest charges for the underpayment of PEG fees. Therefore, A&S utilized the language from the California Constitution, Article 15, Section 1, to determine the interest charges associated with PEG fees. A&S calculated interest charges at 7.00%, compounded annually, through January 31, 2017. A&S assumed that payment of the outstanding amount would be on January 31, 2017. If payment is subsequent to January 31, 2017, additional interest charges will accrue. Interest charges will be recalculated based on when actual payment is expected to be received.

**AUDIT FEES**

In accordance with DIVCA, Section 5860(i), "If the examination discloses that the holder has underpaid franchise fees by more than 5 percent during the examination period, the holder shall pay all of the reasonable and actual costs of the examination." The identified underpayment due to SMCTC from our review did not exceed the 5.00% threshold for the review period. Thus, reimbursement of the audit fee is not included in Table 1.

**RECOMMENDATIONS**

A&S recommends that SMCTC pursue payment of $884,622 due from Comcast for the underpayment of franchise and PEG fees, including interest charges. Based on our review, it is reasonable to assume that some of the findings noted in this report could be applicable to franchise and PEG fees paid to SMCTC in future quarters. A&S proposes that SMCTC request that Comcast maintain all relevant financial records in case SMCTC decides to review additional years later. The financial records should include accounting records, general ledgers, number of subscribers, and data for advertising revenues. It is imperative to maintain these records because clerical errors, changes in accounting methods, or unique situations that would not surface during the course of the year may be discovered under direct questions and analyses.

# EXHIBIT B

Table 1

### Sacramento Metropolitan Cable Television Commission, California
### Analysis of Franchise and PEG Fees Paid by Comcast
### January 1, 2013 through December 31, 2014

| Item No. | Description | Franchise Fees Due to SMCTC | PEG Fees Due to SMCTC | Total Due to SMCTC | |
|---|---|---|---|---|---|
| | Franchise & PEG Fees Paid by Comcast | $19,599,011 | $3,928,914 | $23,527,925 | |
| | California PUC Fees | (46,076) | - | (46,076) | |
| | Net Amount Paid by Comcast | $19,552,936 | $3,928,914 | $23,481,850 | |
| | | | | | |
| | **Adjustments** | | | | |
| A | Subscriber Revenues | $16,718 | $3,344 | $20,062 | Comcast agrees |
| B | Multi-Service Revenues | 192,358 | 38,472 | 230,829 | |
| C | Late Fees | 44,032 | 8,806 | 52,839 | |
| D | Insufficent Funds Fees | 11,563 | 2,313 | 13,875 | |
| E | Video Installation/Activation | 18,803 | 3,761 | 22,564 | |
| F | Video Revenues in HSD Service | 8,564 | 1,713 | 10,277 | Comcast agrees |
| G | Bad Debt | 27,776 | 5,555 | 33,331 | Comcast agrees |
| H | PEG Fee Revenues | 194,282 | 38,856 | 233,139 | |
| I | Tower Rentals | 788 | 158 | 946 | |
| J | Home Shopping | 1,225 | 245 | 1,470 | Comcast agrees |
| K | Launch Incentives | 14,587 | 2,917 | 17,504 | |
| L | California PUC Fees | - | - | - | |
| | Total Adjustments | $530,696 | $106,139 | $636,835 | |
| | | | | | |
| | Franchise & PEG Fees Calculated by A&S | $20,129,707 | $4,035,053 | $24,164,760 | |
| | Franchise & PEG Fees Paid by Comcast | (19,552,936) | (3,928,914) | (23,481,850) | |
| | Amount Due to SMCTC | 576,772 | 106,139 | 682,911 | |
| M | Interest Charges | 100,036 | 29,750 | 129,786 | |
| | Total Amount Due to SMCTC | $676,807 | $135,889 | $812,696 | |

**EXHIBIT C**



# SACRAMENTO METROPOLITAN
# CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661 • Fax: (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Agreement individually as a Party or collectively as the Parties.

## RECITALS

A.    In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B.    Comcast provides cable television service within the Commission's jurisdiction.

C.    The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D.    As the statute of limitations may shortly begin to run on some potential claims, the Parties wish to preserve the status of their respective positions and further wish to avoid the expense of litigation, if possible. The parties, therefore, believe that a Tolling Agreement is in their mutual best interest.

NOW, THEREFORE, the Parties that execute this Tolling Agreement agree as follows:

1.    In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of contract and/or any other causes of action under common law, state, federal, or local laws, and any defenses thereto, are suspended and tolled effective the date the last party has signed the Agreement ("Effective Date") through and including July 19, 2016.

2.    The execution of this Agreement is not and shall not be deemed to constitute evidence of or an admission of liability for any claim or cause of action.

3.    This Agreement shall not revive any causes of action or claims belonging to any party that were extinguished or barred prior to the Effective Date.

- 1 -

2016-052A

R2461.00000\24736365.1

4. This Agreement is the product of joint negotiation among the Parties and their respective attorneys and shall not be construed against any of the Parties.

5. This Agreement may be executed in counterparts.

6. The persons signing below are duly authorized to act on behalf of the persons and entities obligated and their execution of this Agreement binds the parties on whose behalf they sign. This Agreement shall be binding upon those parties who sign the Agreement.

7. This Agreement contains the entire agreement of the Parties and supersedes any prior written or oral agreements between them concerning the subject matters contained herein. No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing.

8. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally, by reliable overnight courier, or by facsimile transmission for receipt during the receiving parties' normal business hours to the party to whom notice is to be given, or on the third (3rd) day after mailing if mailed to the party to whom notice is to be given, by first class mail, registered or certified, return receipt requested, postage prepaid, and properly addressed as follows:

| | |
|---|---|
| Commission: | Sacramento Metropolitan Cable Television Commission<br>799 G Street, 4th Floor<br>Sacramento, CA 95814<br>Attention: Robert Davison, Executive Director<br>Facsimile: (916) 854-9666 |
| With a copy to: | Harriet Steiner<br>Best Best & Krieger LLP<br>500 Capitol Mall, Suite 1700<br>Sacramento, CA 95814<br>Facsimile: (916) 325-4010 |
| Comcast: | Lee-Ann Peling<br>Director of Franchise Operations, CA Region<br>Comcast<br>3055 Comcast Place<br>Livermore, CA 94551-9559 |
| With a copy to: | Marc Lockard<br>Regulatory Compliance Manager<br>Comcast Corporation<br>200 Cresson Boulevard<br>Phoenixville, PA 19460 |

- 2 -

2016-052A

9.      Each Signing Party shall become bound by the Agreement immediately upon affixing his or her signature hereto, independently of the signature of any other Party.

10.      This Agreement shall be governed and construed in accordance with the statutes and laws of the State of California. The venue of any suit filed by either Party shall be vested in the state courts of the County of Sacramento, or if appropriate, in the United States District Court, Eastern District of California.

The Parties acknowledge and accept the terms and conditions of this Tolling Agreement as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Agreement shall become operative on the Effective Date.

SACRAMENTO METROPOLITIAN CABLE          COMCAST CABLE COMMUNICATIONS
TELEVISION COMMISSION                    MANAGEMENT, LLC

By: _____           By: _____

Its: _Exec. Director_                    Its: _R V P_

Dated: _4 - 25 - 16_                     Dated: _4/22/2016_

- 3 -

2.     Except as expressly modified by this Amendment, the Agreement remains in full force and effect.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment shall become operative on the date it is signed by the last party to execute it.

SACRAMENTO METROPOLITAN CABLE
TELEVISION COMMISSION

By: _____

Its: _Exec. Director_

Dated: _7-14-2016_

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By: _____

Its: _VP, External Affairs_

Dated: _July 11th 2016_



# SACRAMENTO METROPOLITAN
# CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661 • Fax: (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## FIRST AMENDMENT TO TOLLING AGREEMENT

This First Amendment to Tolling Agreement ("Amendment") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Amendment individually as a Party or collectively as the Parties.

### RECITALS

A.    In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B.    Comcast provides cable television service within the Commission's jurisdiction.

C.    The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D.    The Parties previously entered into that Tolling Agreement ("Agreement"), tolling the statute of limitations for claims related to the Audit until July 19, 2016.

E.    As this tolling period will expire soon, the Parties wish to extend the Agreement ("Agreement") for an additional sixty days as set forth in this Amendment.

NOW, THEREFORE, the Parties that execute this Amendment agree as follows:

1.    Section 1 of the Agreement is amended to read in full as follows:

"1.    In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of contract and/or any other causes of action under common law, state, federal, or local laws, and any defenses thereto, are suspended and tolled effective the date the last party has signed the Agreement ("Effective Date") through and including September 19, 2016."



# SACRAMENTO METROPOLITAN
# CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661 • Fax: (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## SECOND AMENDMENT TO TOLLING AGREEMENT

This Second Amendment to Tolling Agreement ("Amendment") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Amendment individually as a Party or collectively as the Parties.

## RECITALS

A.     In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B.     Comcast provides cable television service within the Commission's jurisdiction.

C.     The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D.     The Parties previously entered into that Tolling Agreement ("Agreement"), tolling the statute of limitations for claims related to the Audit until July 19, 2016.

E.     The Parties also entered into that First Amendment to Tolling Agreement ("First Amendment") extending the tolling period until September 19, 2016.

F.     As this tolling period will expire soon, the Parties wish to extend the Agreement as amended by First Amendment for an additional sixty days as set forth in this Amendment.

NOW, THEREFORE, the Parties that execute this Amendment agree as follows:

1.     Section 1 of the Agreement as amended by the First Amendment is amended to read in full as follows:

"1.     In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of contract and/or any other causes of action under common law, state, federal, or local laws, and any defenses thereto, are suspended and tolled effective the date the last party has signed the

2016-131A

Agreement ("Effective Date") through and including November 18, 2016."

2. Except as expressly modified by this Amendment, the Agreement as amended by the First Amendment remains in full force and effect.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment shall become operative on the date it is signed by the last party to execute it.

SACRAMENTO METROPOLITAN CABLE
TELEVISION COMMISSION

By: _____

Its: _Executive Director_

Dated: _9/7/2016_

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By: _____

Its: _Vice President External Affairs_

Dated: _9/7/2016_



# SACRAMENTO METROPOLITAN
# CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661 • Fax: (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## THIRD AMENDMENT TO TOLLING AGREEMENT

This Third Amendment to Tolling Agreement ("Amendment") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Amendment individually as a Party or collectively as the Parties.

## RECITALS

A.  In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B.  Comcast provides cable television service within the Commission's jurisdiction.

C.  The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D.  The Parties previously entered into that Tolling Agreement ("Agreement"), tolling the statute of limitations for claims related to the Audit until July 19, 2016.

E.  The Parties also entered into that First Amendment and Second Amendment to Tolling Agreement (collectively, the "Amendments") extending the tolling period until November 18, 2016.

F.  As this tolling period will expire soon, the Parties wish to extend the Agreement as amended by Amendments until February 28, 2017 as set forth in this Amendment.

NOW, THEREFORE, the Parties that execute this Amendment agree as follows:

1.  Section 1 of the Agreement as amended by the First Amendment is amended to read in full as follows:

> "1.  In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of contract and/or any other causes of action under common law, state, federal, or local laws, and any defenses thereto, are

2016-131B

suspended and tolled effective the date the last party has signed the Agreement ("Effective Date") through and including February 28, 2017."

2.     Except as expressly modified by this Amendment, the Agreement as amended by the Amendments remains in full force and effect.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment shall become operative on the date it is signed by the last party to execute it.

SACRAMENTO METROPOLITAN CABLE
TELEVISION COMMISSION

By: _____

Its: _Executive Director_

Dated: _11/19/16_

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By: _____

Its: _V.P., External Affairs_

Dated: _11/18/16_



# SACRAMENTO METROPOLITAN
# CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661 • Fax: (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## FOURTH AMENDMENT TO TOLLING AGREEMENT

This Fourth Amendment to Tolling Agreement ("Amendment") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Amendment individually as a Party or collectively as the Parties.

### RECITALS

A. In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B. Comcast provides cable television service within the Commission's jurisdiction.

C. The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D. The Parties previously entered into that Tolling Agreement ("Agreement"), tolling the statute of limitations for claims related to the Audit until July 19, 2016.

E. The Parties also entered into that First Amendment, Second Amendment and Third Amendment to Tolling Agreement (collectively, the "Amendments") extending the tolling period until February 28, 2017.

F. As this tolling period will expire soon, the Parties wish to extend the Agreement as amended by Amendments until August 31, 2017 as set forth in this Amendment.

NOW, THEREFORE, the Parties that execute this Amendment agree as follows:

1. Section 1 of the Agreement as amended by the First Amendment is amended to read in full as follows:

> "1. In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of contract and/or any other causes of action under common law,

2016-131C

state, federal, or local laws, and any defenses thereto, are suspended and tolled effective the date the last party has signed the Agreement ("Effective Date") through and including August 31, 2017."

2.    Except as expressly modified by this Amendment, the Agreement as amended by the Amendments remains in full force and effect.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment shall become operative on the date it is signed by the last party to execute it.

SACRAMENTO METROPOLITAN CABLE TELEVISION COMMISSION

By: _____

Its: _Exec Director_____

Dated: _Feb 27, 2017_____

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC

By: _Mary Stutt_____

Its: _Vice President_____

Dated: _February 23, 2017_____



# SACRAMENTO METROPOLITAN
# CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661• Fax (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## FIFTH AMENDMENT TO TOLLING AGREEMENT

This Fifth Amendment to Tolling Agreement ("Amendment") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Amendment individually as a Party or collectively as the Parties.

## RECITALS

A. In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B. Comcast provides cable television service within the Commission's jurisdiction.

C. The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D. The Parties previously entered into that Tolling Agreement ("Agreement"), tolling the statute of limitations for claims related to the Audit until July 19, 2016.

E. The Parties also entered into that First Amendment, Second Amendment, Third Amendment and Fourth Amendment to Tolling Agreement (collectively, the "Amendments") extending the tolling period until August 31, 2017.

F. As this tolling period will expire soon and Comcast has requested the opportunity provide a response to the Audit prior to the Commission filing a lawsuit, the Parties wish to extend the Agreement as amended by Amendments until October 2, 2017 as set forth in this Amendment.

NOW, THEREFORE, the Parties that execute this Amendment agree as follows:

1. Section 1 of the Agreement as amended by the First Amendment is amended to read in full as follows:

> "1. In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of

contract and/or any other causes of action under common law, state, federal, or local laws, and any defenses thereto, are suspended and tolled effective the date the last party has signed the Agreement ("Effective Date") through and including October 2, 2017."

2.  Except as expressly modified by this Amendment, the Agreement as amended by the Amendments remains in full force and effect.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment shall become operative on the date it is signed by the last party to execute it.

SACRAMENTO METROPOLITAN CABLE
TELEVISION COMMISSION

By: _____

Its: _Executive Director_

Dated: _8/30/17_

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By: _____

Its: _Vice PResident_

Dated: _8/29/17_



# SACRAMENTO METROPOLITAN
# CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661 • Fax: (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## SIXTH AMENDMENT TO TOLLING AGREEMENT

This Sixth Amendment to Tolling Agreement ("Amendment") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Amendment individually as a Party or collectively as the Parties.

### RECITALS

A.     In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B.     Comcast provides cable television service within the Commission's jurisdiction.

C.     The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D.     The Parties previously entered into that Tolling Agreement ("Agreement"), tolling the statute of limitations for claims related to the Audit until July 19, 2016.

E.     The Parties also entered into that First Amendment, Second Amendment, Third Amendment, Fourth Amendment, and Fifth Amendment to Tolling Agreement (collectively, the "Amendments") extending the tolling period until October 2, 2017.

F.     As this tolling period will expire soon, the Parties wish to extend the Agreement as amended by the Amendments to December 1, 2017 as set forth in this Amendment.

NOW, THEREFORE, the Parties that execute this Amendment agree as follows:

1.     Section 1 of the Agreement as amended by the First Amendment is amended to read in full as follows:

> "1.     In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of contract and/or any other causes of action under common law, state, federal, or local laws, and any defenses thereto, are

2017-163

suspended and tolled effective the date the last party has signed the Agreement ("Effective Date") through and including December 1, 2017."

2. Except as expressly modified by this Amendment, the Agreement as amended by the Amendments remains in full force and effect.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment shall become operative on the date it is signed by the last party to execute it.

SACRAMENTO METROPOLITAN CABLE
TELEVISION COMMISSION

By: _Rht A. D___

Its: _Executive Director_

Dated: _9/28/17_

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

By: _Elizabeth Skt_

Its: _Vice President_

Dated: _9/28/17_



# SACRAMENTO METROPOLITAN CABLE TELEVISION COMMISSION

799 G Street, 4th Floor, Sacramento, CA 95814 • (916) 874-6661• Fax: (916) 854-9666 • www.sacmetrocable.tv

A Joint Powers Agency Representing Sacramento County and the Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova and Sacramento

## SEVENTH AMENDMENT TO TOLLING AGREEMENT

This Seventh Amendment to Tolling Agreement ("Amendment") is entered into by and between the Sacramento Metropolitan Cable Television Commission ("Commission") and Comcast Cable Communications Management, LLC dba Comcast ("Comcast"). The Commission and Comcast may be referred to in this Amendment individually as a Party or collectively as the Parties.

## RECITALS

A. In part, the Commission is responsible for collecting franchisee fees and Public, Education and Government ("PEG") fees from cable providers operating within the Commission's jurisdiction.

B. Comcast provides cable television service within the Commission's jurisdiction.

C. The Commission is currently auditing Comcast to ensure it properly paid all amounts owed to the Commission for Calendar Years 2013 and 2014 (the "Audit").

D. The Parties previously entered into that Tolling Agreement ("Agreement"), tolling the statute of limitations for claims related to the Audit until July 19, 2016.

E. The Parties also entered into that First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment and Sixth Amendment to Tolling Agreement (collectively, the "Amendments") extending the tolling period until December 1, 2017.

F. As this tolling period will expire soon, the Parties wish to extend the Agreement as amended by the Amendments to January 31, 2018 as set forth in this Amendment.

NOW, THEREFORE, the Parties that execute this Amendment agree as follows:

1. Section 1 of the Agreement as amended by the First Amendment is amended to read in full as follows:

> "1. In consideration of their mutual desires, the Parties hereby agree that any and all statutes of limitation or repose which have not already expired (April 14, 2016 and forward) applicable to the causes of action or claims which have already accrued or may accrue in the future in favor of any party hereto in connection with the Audit, including any and all causes of action for breach of contract and/or any other causes of action under common law,

state, federal, or local laws, and any defenses thereto, are suspended and tolled effective the date the last party has signed the Agreement ("Effective Date") through and including January 31, 2018."

2.  Except as expressly modified by this Amendment, the Agreement as amended by the Amendments remains in full force and effect.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment shall become operative on the date it is signed by the last party to execute it.

SACRAMENTO METROPOLITAN CABLE TELEVISION COMMISSION

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC

By: _____

By: _____

Its: _____Exec. Director_____

Its: _____Vice President_____

Dated: _____11/29/17_____

Dated: _____11/28/17_____

82461.00007\30181484.2

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 720 Ninth STREET<br><br>MAILING ADDRESS: 720 Ninth STREET<br><br>CITY AND ZIPCODE: Sacramento, CA 95814-1311<br><br>BRANCH NAME: Gordon D Schaber Courthouse<br><br>PHONE NUMBER: (916) 874-5522 | |

| SHORT TITLE: Sacramento Metropolitan Cable Television Commission vs. | |
|---|---|

| NOTICE OF CASE MANAGEMENT CONFERENCE<br>AND ORDER TO APPEAR | CASE NUMBER:<br>34-2018-00226254-CU-BC-GDS |
|---|---|

## Hearing Date

The above entitled action has been set for a case management conference at 08:30 AM on 08/02/2018 in Department 39 in accordance with California Rules of Court 212. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

## Case Management Statement

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

### Minimum Requirements

Prior to the filing of the case management statement, the parties should have done the following:
-Served all parties named in the complaint within 60 days after the summons has been issued
-Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
-Met and conferred with all parties as required by CRC 212 (f) to discuss and resolve issues set forth therein.

### Tentative Ruling

Following its review of the case management statement(s), the court may determine that a case management conference is not necessary.
To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Thursday calendar by accessing the court's internet website at www.saccourt.ca.gov

### Case Management Orders

At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

### Service of Case Management Notice

Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

### Certification Filed in Lieu of Case Management Statement

If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

**Compliance**
Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

**Continuances**
Case management conference will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 01/30/2018

David W. Abbott

David W. Abbott, Judge of the Superior Court

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Harriet A. Steiner, SBN 109436 Joshua Nelson, SBN 260803
BEST BEST. & KRIEGER LLP
500 Capitol Mall, Suite 1700
Sacramento, CA 95814
TELEPHONE NO. (916) 325-4000     FAX NO. (916) 325-4010
ATTORNEY FOR *(Name)* Sacramento Metropolitan Cable Television Commission

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SACRAMENTO**
STREET ADDRESS 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE Sacramento, CA 95814
BRANCH NAME Gordon D. Schaber Sacramento County Courthouse

**FOR COURT USE ONLY**

FILED
Superior Court Of California,
Sacramento
01/29/2018
nzeyaad
By _____ , Deputy
Case Number:
34-2018-00226254

CASE NAME: Sacramento Metropolitan Cable Television Commission
v. Comcast Cable Communications Management, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder | | |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* four
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 29, 2018

Harriet A. Steiner
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com